No. 85-530

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

ROSE N. BUCKMAN,

       Claimant and Appellant,

  -vs-

MONTANA DEACONESS HOSPITAL,
        Employer,

  and

STATE COMPENSATION INSURANCE FUND,

       Defendant and Respondent.

APPEAL FROM:  The Workers' Compensation Court, The Honorable
Timothy Reardon, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Lloyd E. Hartford argued, Billings, Montana

    For Respondent:

        Hughes, Kellner, Sullivan & Alke; Mike McCarter argued,
        Helena, Montana

Submitted:  July 24, 1986
Decided:  December 12, 1986

Filed:  **DEC 12 1986**

_Ethel M. Harrison_
Clerk

Mr. Justice William E. Hunt, Sr., delivered the Opinion of the Court.

Rose Buckman appeals the judgment of the Workers' Compensation Court denying her a conversion of her bi-weekly Workers' Compensation benefits to a lump-sum payment. Buckman's employer, Montana Deaconess Hospital and its insurer, the State Compensation Insurance Fund appealed a portion of the same judgment wherein the trial court concluded that insurers could not discount lump-sum conversions awarded for injuries which occurred prior to April 15, 1985.

We affirm the Workers' Compensation Court in part, reverse in part, and remand for proceedings pursuant to this opinion.

The issues presented to us concern constitutional challenges to the 1985 legislative amendment to § 39-71-741, MCA, first presented to the legislature as S.B. 281. Specifically, we are asked to decide:

1. Whether the procedure outlined in § 39-71-741(2), MCA (1985), to guide the Workers' Compensation judge in determining whether lump-sum conversion of biweekly payments for permanent total injury will be awarded, as applied to conversions for injuries occurring before April 15, 1985, is constitutionally prohibited.

2. Whether the prospective application of the procedure outlined in § 39-71-741(2), MCA (1985), violates the equal protection guarantees of the Montana and United States Constitutions.

3. Whether the directions contained in § 39-71-741(1), MCA (1985), to discount to present value all conversions of

lump sums as applied to conversions for injuries occurring prior to April 15, 1985, are constitutionally prohibited.

4. Whether the Workers' Compensation Court erred in denying Buckman a lump-sum conversion of her biweekly benefits.

In September, 1985, the Workers' Compensation Court entered its findings of fact and conclusions of law and judgment determining that the appellant Buckman, was permanently totally disabled and that she was entitled to disability benefits. The Court denied her request for a lump-sum conversion based upon her failure to meet the requirements set out in § 39-71-741(2), MCA. The court said the amendments found in § 39-71-741(2), MCA were procedural in nature and could therefore be applied in Buckman's case without offense to either constitution. Buckman had challenged the constitutionality of § 39-71-741, MCA, as applied to her case on the grounds that her injury predated the effective date of the amendments. The Workers' Compensation Court, relying on its earlier opinion in Stelling v. Rivercrest Ranches, Inc., WCC No. 8412-2757 (1985), concluded that the discounting provision, found in § 39-71-741(1), MCA, if applied retroactively to Buckman's award, would violate the contract clauses of both the United States and Montana Constitutions. Buckman appeals the judgment as it concerns § 39-71-741(2), MCA, and the Hospital and State Fund appeal the judgment as it concerns § 39-71-741(1), MCA.

For the reasons stated below, we hold that: As to the first issue the application of § 39-71-741(2), MCA is constitutionally prohibited as applied to injuries that occurred prior to April 15, 1985. As to the second issue we

hold that the prospective application of the procedure does not violate the equal protection guarantees of the Montana and United States Constitutions. As to the third issue, we hold that discounting to present value conversions of lump-sums for injuries that occurred prior to April ~~7~~ *15*, 1985 ~~9 74~~ *12/22/86* is constitutionally prohibited. Finally, as to the lump-sum conversion of claimant's biweekly benefits we remand for a determination of whether claimant is entitled to a conversion of her benefits in light of our construction of § 39-71-741, MCA.

As to the first issue, Buckman challenges the retroactive application of the procedure contained in § 39-71-741(2), MCA. That statute as amended states that it "must be used by the division and workers' compensation judge in determining whether a lump-sum conversion of permanent total biweekly payments will be approved or awarded . . ." Before discussing any constitutional questions, it is important that we consider the statutes which are to be applied to an injured worker with regard to lump-sum conversions or to normal benefits.

Workers' compensation benefits are determined by the statutes in effect as of the date of injury. Trusty v. Consolidated Freightways (Mont. 1984), 681 P.2d 1085, 41 St.Rep. 973; Iverson v. Argonaut Insurance Co. (Mont. 1982), 198 Mont. 340, 645 P.2d 1366.

In Trusty, we held that the standards for computations of benefits for the claimant are fixed by the statutes in effect as of the date of injury and concluded that the legislature could not enact a statute reducing the benefits to an injured worker by reason of social security benefits paid. We further stated:

- 4 -

> The statute in effect on the date of injury deter-
> mines the benefits to be received . . . (Citations
> omitted). That sets the contractual rights and
> debts of the parties. In the instant case, once
> the 100% offset statute was found constitutionally
> unenforceable, that portion of the statute became
> void. This Court cannot come back and change the
> statute to a 50% offset. Once we found the statute
> constitutionally unenforceable, then no offset
> remains in effect.
>
> We hold that the benefits due to the appellant
> under his Workers' Compensation award shall not be
> reduced by an offset for Social Security benefits.

681 P.2d at 1088, 41 St.Rep. at 976.

The reasoning of the foregoing cases properly controls in the present case where we are involved with an application for a lump-sum conversion of permanent biweekly payments. We specifically hold that where an injured worker seeks a lump-sum conversion of biweekly benefits, the statutes in effect at the time of injury set the standards for either the award or refusal of a lump-sum conversion.

We therefore conclude that the amendments made in 1985 to § 39-71-741(2), MCA, cannot be applied in considering the Buckman application for a lump-sum conversion. We note this is consistent with the 1985 amendments as there is no provision in those amendments stating that any portion should be applied retroactively, with a single exception of the discount provision.

The second issue is whether the prospective application of the procedure set out in § 39-71-741(2), MCA violates the equal protection guarantees of the Montana and United States Constitutions. We hold that it does not.

After careful consideration of the language of the procedure set out in § 39-71-741(2) and (3) and after reference to the legislative history we are convinced that those subsections merely codify, in detailed form, the prior

- 5 -

case law which allowed a conversion of biweekly benefits when it was in the best interests of the claimant.

During the hearings leading to the enactment of S.B. 281 there was considerable discussion of more specific statutory language concerning the award of lump sums. The record of the February 14, 1985 meeting of the senate subcommittee is representative of the intent of the legislature when considering the specific language. Senator Haffey asked the administrator of the Workers' Compensation Division whether "if what he is talking about is language based on the experience of the last couple of years, under which lump sum payments are called for . . . Mr. Blewett replied yes."

Our estimate that the legislative intent was to codify existing law, rather than altering the law, is borne out by examination of the procedure contained in § 39-71-741(2) and (3).

Subsection 2 directs the Workers' Compensation Court to award conversions "only if the worker or his beneficiary demonstrates that his ability to sustain himself financially is more probable with a whole or partial lump-sum conversion than the biweekly payments and his other available resources." The statute then goes on to lay out separate criteria to indicate what is meant by "sustain himself financially." We note here that the criteria in subsection 2(a), that the difference between the discounted value of a conversion and the future value of biweekly benefits cannot be the only grounds for a conversion, directly codifies the prior law of Kent v. Sievert (1971), 158 Mont. 79, 489 P.2d 104. The language contained in subsection 2(b) states that the improvement of a claimant's financial position should not be the basis of an award unless it can be awarded at the

price of an annuity. This would cost the insurer the same as if it had purchased an annuity under the option contained in § 39-71-2207, MCA, and merely states the same rule as our holdings in Kent and in LaVe v. School Dist. #2 (Mont. 1986), 713 P.2d 546, 43 St.Rep. 165.

Similarly, case law has required claimants to submit financial plans when outstanding or delinquent debt is the basis for a conversion request. Kuehn v. National Farmers Union Property and Cas. Co. (1974), 164 Mont. 303, 521 P.2d 921. Furthermore where the court has found the outstanding debt was not so significant as to necessitate a lump-sum conversion, it has been denied. Ruple v. Bob Peterson Logging Co. (Mont. 1984), 679 P.2d 1252, 41 St.Rep. 704. This prior law is directly reflected in the language of § 39-71-741(2)(c).

Subsection 2(d) of that same statute likewise codifies prior case law requiring that a claimant show the worthiness of her business venture plan and the adequacy of her business acumen. See Bundtrock v. Duff Chevrolet (1982), 199 Mont. 128, 647 P.2d 856; Krause v. Sears, Roebuck and Co. (1982), 197 Mont. 102, 641 P.2d 458.

Finally, § 39-71-741(3) allows the division to order "financial, medical, vocational, rehabilitation, educational or other evaluative studies to determine whether a lump-sum conversion is in the best interest of the worker or his beneficiary." These tests reflect the historical ways in which a claimant could assert that a conversion was in her best interests other than by showing strict financial necessity. Prior case law has held a conversion to be in the best interests of a claimant where medical considerations required that the claimant and his family move to a different

climate. Polich v. Whalen's O.K. Tire Warehouse (1983), 203 Mont. 280, 661 P.2d 38. Prior case law has held it to be in the best interest of the claimant where diagnosed mental instability made the award of a lump sum necessary to relieve the claimant's abnormal anxiety. Legowik v. Montgomery Ward and Co. (1971), 157 Mont. 436, 486 P.2d 867.

The legislative use of the term "best interest" further convinces us that § 39-71-741(3), MCA, reflects the intent of the legislature to make explicit in the statutory language the previously used best interest test for the conversion of biweekly benefits.

Subsection 3 itself does not mandate conversion of benefits. However, when read in combination with subsection 5, giving the Workers' Compensation Court jurisdiction to make the final determination, the combination convinces us that subsection 3 provides an alternative method to qualify for a lump-sum award when strictly financial considerations do not mandate a conversion. This interpretation is buttressed by a May 7, 1985, policy statement from the Division of Workers' Compensation.

In summary, we construe the language of the statute to represent no change from the law existing prior to April 15, 1985, and to represent no significant change from the requirements placed on the permanently partially disabled by case law. Therefore because no rights have been burdened, nor any classification of claimants treated dissimilarly, we can find no violation of equal protection in the prospective application of the procedure set out in § 39-71-741, MCA.

As to the third issue, Buckman challenged the amended § 39-71-741(1), MCA, as applied to her case, as a violation of her "rights under the Montana and United States

Constitutions, including but not limited to her right to equal protection of the laws and due process of law." The Workers' Compensation Court held the discounting provision violated the state and federal constitutional prohibitions against impairments of contracts and sustained the procedural criteria against the same impairment of contract test. Consequently the lower court did not reach the due process or equal protection issues.

In Montana we have repeatedly recognized that the state constitution provides protection of rights separate from the protection afforded by the federal constitution. State v. Johnson (Mont. 1986), 719 P.2d 1248, 1254-55, 43 St.Rep. 1010, 1016-18; Pfost v. State (Mont. 1985), 713 P.2d 495, 500-1, 42 St.Rep. 1957, 1963-64; Madison v. Yunker (1978), 180 Mont. 54, 60, 589 P.2d 126, 129.

Because the federal constitution establishes the floor and not the apex of constitutional rights, state action may violate our Montana Constitution, but not violate any federal constitutional guarantee. Therefore, pursuant to the wisdom in the rule that we will not search to reach any issue not necessary to dispose of the case, we will not reach a federal constitutional challenge unless and until the case may not be resolved on adequate and independent state grounds.

We now turn our attention to the contract clause challenge before us. In the past we have generally interpreted the contract clauses found in Art. II, § 31, 1972 Mont. Const. and Art. I, § 10(1), United States Constitution as interchangeable guarantees against legislation impairing the obligation of contracts. Neel v. First Federal Savings and Loan Assoc. (Mont. 1984), 675 P.2d 96, 103, 41 St.Rep. 18, 25. Consistent with our intention to initially examine

state grounds in an effort to resolve the issue, we turn to prior Montana contract clause case law for independent interpretation of our own prohibition of impairment of contract. Federal cases cited are relied on for their analytical persuasiveness but in no way mandate our decision.

The Montana Constitution states, "No ex post facto law nor any law impairing the obligation of contracts, or making any irrevocable grant of special privileges, franchises, or immunities, shall be passed by the legislature." Art. II, § 31, 1972 Mont. Const. We have construed the two contract clauses interchangeably, and have cited United States Supreme Court opinions to test the validity of Montana legislation under both contract clauses. Neel, 675 P.2d at 103, 41 St.Rep. at 25.

The basis for Workers' Compensation is a contract of hire either express or implied. Section 39-71-117, MCA; § 39-71-118, MCA; 1C Larson Workmen's Compensation Law § 47.10 (1986). This Court, as well as courts of other states have held that Workers' Compensation is based on contract theory. Estate of Baker (Kan. 1977), 563 P.2d 431; Harris v. National Truck Service (Ala. 1975), 321 So.2d 690; Spengler v. Employers' Commercial Union and Insurance Co. (Ga. App. 1974), 206 S.E.2d 693; Gaston v. San Ore Construction Co. (Kan. 1970), 477 P.2d 956; Nadeau v. Power Plant Engineering Co. (Ore. 1959), 337 P.2d 313; Morgan v. Industrial Accident Board (1956), 130 Mont. 272, 300 P.2d 954.

This Court has assumed for a number of years that the Workers' Compensation statutes in effect on the date of injury set the contractual rights between the parties. Trusty, 681 P.2d at 1085, 41 St.Rep. at 973. This is consistent with the provisions of the Workers' Compensation

Act that the term employee or worker means "each person in this state . . . who is in the service of an employer . . . under an appointment or contract of hire, express or implied, oral or written." Section 39-71-118, MCA.

We approve the holding of the Kansas Supreme Court in Estate of Baker (Kan. 1977), 563 P.2d at 436:

> The liability of an employer to an injured or deceased employee arises out of the contract between them; the terms of the workmens' compensation statute are embodied in the contract. The substantive rights between the parties are determined by the law in effect on the date of the injury. (Citation omitted.) However, the rights under the contract vest when the cause of action accrues, and the cause of action accrues on the date of injury or death. (Citations omitted.)

We conclude that this analysis is clearly applicable to this case where there is an application for conversion of biweekly benefits to a lump-sum payment. We hold that the liability of Montana Deaconess Hospital, employer, to Buckman, employee, arises out of the contract between them, and that the Workers' Compensation statutes in effect on the date of the Buckman injury are a part of that contract.

The question becomes whether the statute at issue in this case constitutes an impairment of the obligation of contract. We first turn to the three-tiered analysis set down by the United States Supreme Court in Energy Reserves Group, Inc. v. Kansas Power and Light Co. (1983), 459 U.S. 400, 103 S.Ct. 697, 74 L.Ed.2d 569, and followed by this Court in Neel, 675 P.2d at 96, 41 St.Rep. at 18. The threshold inquiry is "whether the state law has, in fact, operated as a substantial impairment of a contractual relationship." Neel, 675 P.2d at 104, 41 St.Rep. at 27. Next, we must look to whether the state in justification, has a significant and legitimate public purpose for the

- 11 -

regulations. Finally, we must inquire whether the adjustment of the rights and responsibilities of the contracting parties are based on reasonable conditions and of a character appropriate to the public purpose justifying adoption of the legislation. Energy Reserves, 459 U.S. at 411-13, 103 S.Ct. at 704-5, 74 L.Ed.2d at 580-81. Neel, 675 P.2d at 104-5, 41 St.Rep. at 27-8.

Several factors are used to evaluate the impairment of a contract. Total destruction of the contract is not necessary for a finding of substantial impairment. The severity of the impairment increases the level of scrutiny to which the legislation is subjected. However, state regulation that restricts a party to gains it reasonably expects from a contract does not substantially impair the contract. In determining impairment, we are to consider the extent to which the industry has been regulated in the past. Energy Reserves, 459 U.S. at 411, 103 S.Ct. at 704, 74 L.Ed.2d at 580. In analyzing these factors, the Workers' Compensation Court stated:

> Admittedly, workers' compensation is a closely regulated industry. However, the impairment to the claimant's contractual rights is severe. An increased level of scrutiny is required. A claimant, able to establish the required condition precedent, that it is in his best interests to be awarded a lump sum advance, is severely impacted by the discount provision and annuity provision in Senate Bill 281. This is a substantial restriction not anticipated under the parties' [sic] contract.

We agree that the discounting provision as retroactively applied substantially impairs the rights of claimants which vested at the time of injury by altering the remedy to which the claimant is entitled.

The second tier of the analysis is if the state in justification has a significant and legitimate public purpose

behind the regulation. In this case, because the state is a party to this contract a heightened level of scrutiny attaches:

> The Contract Clause is not an absolute bar to subsequent modification of a State's own financial obligations. As with laws impairing the obligations of private contracts, an impairment may be constitutional if it is reasonable and necessary to serve an important public purpose. In applying this standard, however, complete deference to a legislative assessment of reasonableness and necessity is not appropriate because the State's self-interest is at stake.

United States Trust Co. of New York v. New Jersey (1977), 431 U.S. 1, 25-6, 97 S.Ct. 1505, 1519, 52 L.Ed.2d 92, 111-12.

The defendants advance as the purpose for enactment of § 39-71-741, MCA, to "head off threatened premium increases, hold down employers' cost of doing business, and promote the Montana economy." We certainly agree with the legitimacy of these purposes and share the legislative concerns in promoting Montana's economy. However, those concerns in and of themselves are not sufficient to solve the issues before us in the present case. Clearly the discount provisions of the section may be applied to injuries occurring after the effective date of the Act. Such application will undoubtedly result in the type of savings desired by the legislature. However, our concerns must be directed to those who were injured prior to April, 1985, such as Rose Buckman. The record does not contain any significant evidence bearing on the cost to the state which may result if the discount provisions are not applied to workers injured prior to April, 1985. Under those circumstances, we conclude that the state has failed to prove a significant public interest which requires the application of the discount to workers such as Buckman. The general statement of the reason in itself is

not sufficient to justify the severity of the impairment of contract as in this case. We therefore hold that the retroactive application of § 39-71-741, MCA, violates the contract clause of the 1972 Montana Constitution. We affirm the judgment of the Workers' Compensation Court on this issue. Because we have decided the statute is unconstitutional and a violation of the contract clause, we do not reach the due process or equal protection issues.

Finally, Buckman contends that the trial court erred in denying her a conversion. In light of our construction of § 39-71-741, MCA, we remand the case for determination of whether claimant is entitled to a conversion of her benefits to a lump sum.

Affirmed in part, reversed in part and remanded for proceedings pursuant to this opinion.

_____
Justice

We Concur:

_____

_____

_____

_____
Justices

- 14 -

Mr. Justice Frank B. Morrison, Jr. specially concurs as follows:

I concur in the majority opinion although, in my judgment, the legislature intended to change the "best interest" test by enactment of § 39-71-741, MCA. Nevertheless, I concur in the majority holding that the retroactive features of this legislation are unconstitutional. The statutes covering workers' compensation are a part of the employment contract. The statutes in effect at the time of injury control. Any attempt to change these rights after they vest constitutes an abridgment of contract obligations and is unconstitutional as the majority finds.

The prospective application of § 39-71-741, MCA, is affected by the Court's holding that the statute, reduced to its essence, involves no more than the "best interest" test. The Workers' Compensation Court has been proceeding under the assumption that the statute changed the former test and the legislative history indicates that was the intent of the legislature. As noted in the majority opinion the purpose advanced in support of the statute was to "head off threatened premium increases, hold down employers cost of doing business, and promote the Montana economy." To me this indicates that the legislature intended to change eligibility requirements for a lump sum settlement.

The effect of the majority holding will finally realize what the legislature stated its goal to be but totally failed to accomplish. The result of the legislature enacting the subject statute has been to increase the cost of delivering benefits to the worker and has contributed to the financial crisis facing the state insurance fund. Prior to enactment of 39-71-741, MCA, and the bureaucratic regulations

15

promulgated by the division, the worker simply had to show that it was in the best interest of the injured worker to receive a lump sum payment rather than a structured settlement. The workers petition, prepared without assistance of a lawyer, could easily satisfy this burden. The new statute is so complicated that an injured worker has to hire a "Philadelphia lawyer" in every case in which the worker desires to achieve a lump sum payment. Furthermore, the retained counsel must employ a battery of costly expert witnesses to satisfy the requirements of the statute. The result has been increased litigation, greatly increased litigation expenses, and delay in payment of benefits. This increasingly expensive system combined with low premiums charged by the State Fund has produced a very serious financial crisis for the State of Montana.

From a monetary standpoint, it should make no difference to the State Compensation Insurance Fund whether payments are made in a lump sum or paid in a structured settlement. Lump sums are reduced to present value at an interest factor that renders the means of payment financially irrelevant to the fund itself.

The workers' compensation system must be returned to a simple compensation system where injured workers can be compensated without litigation expenses. Litigation can never be eliminated entirely and where legitimate disputes need legal counsel they should go forward and be presented to the Workers' Compensation Court. However, the "garden variety" workers' compensation case should not be subjected to the complicated and tortured scheme set forth in § 39-71-741, MCA.

In my opinion this statute should be repealed and a simple "best interest" test reestablished so that injured

16

workers can be compensated without the necessity of costly litigation. Perhaps the holding of the majority neuters the statute and repeal is unnecessary. If that is the result of the majority opinion a giant step forward has been taken to preserve the future fiscal integrity of the State Compensation Insurance Fund.

_____
Justice

17

Mr. Justice L. C. Gulbrandson, dissenting.

I respectfully dissent.

I would affirm the Workers' Compensation Court ruling that the amendments found in § 39-71-741(2), MCA, are procedural in nature and could be applied in this case even though claimant's injury pre-dated the amendments.

I would reverse the holding of the Workers' Compensation Court that the discounting provision in § 39-71-741(1), MCA, if applied retroactively to Buckman's award, would violate the contract clauses of both the United States and Montana Constitutions.

Those of us who feel that present Workers' Compensation benefits are inadequate may find the majority opinion to be an insurmountable obstacle in the event the legislature, in a better economic climate, should attempt to increase benefits for previously injured workers. The Nevada Supreme Court in K-Mart Corporation v. State Industrial Insurance System (Nev. 1985), 693 P.2d 562, upheld an increase of benefits to workers injured prior to statute amendments and specifically ruled that such an amendment was not an unconstitutional impairment of a contract. The majority opinion effectively rules out the possibility of future relief for previously injured workers in Montana.

The Constitutionality of Senate Bill 281 "is prima facie presumed, and every intendment in its favor will be made unless its unconstitutionality appears beyond a reasonable doubt." T & W Chevrolet v. Darvial (1982), 196 Mont. 287, 641 P.2d 1386, 1370.

In my view, the laws relating to lump sum conversions are unrelated to the enforcement of the bargained for

18