MR. JUSTICE HARRISON
delivered the Opinion of the Court.
Hoagy Carmichael petitioned this Court for a writ of supervisory control challenging the 1987 amendments to the Workers’ Compensation Act concerning dispute resolution and mediation, Sections 39-71-2401 and -2406 through -2411, MCA. We granted the writ for the purpose of determining whether these statutes are constitutional as applied to cases where the injury occurred before the effective date of the amendment, but no petition was filed with the Workers’ Compensation Court until after that date. We find such a retroactive application unconstitutionally impairs a contractual obligation.
Hoagy Carmichael was injured on August 8, 1985, while working in the course and scope of his employment with the respondent, Arco Metals, Incorporated (Arco). Arco is a self insured employer and accepted Carmichael’s compensation claim. Arco commenced the payment of benefits, but subsequently notified Carmichael in a letter dated July 24, 1987, that the benefits would be reduced from temporary total disability to permanent partial disability. In response, on August 3, 1987, Carmichael filed a petition for an emergency hearing before the Workers’ Compensation Court. In his petition, Carmichael stated that due to his disability he was unable to return to work and he had no means of support for his family other than his workers’ compensation benefits.
On September 15, 1987, Arco filed a motion to dismiss Carmichael’s claim based on Section 39-71-2408, MCA, which requires both parties to submit to nonbinding mediation regarding any issue concerning benefits before either party may file a petition in the Workers’ Compensation Court. Section 39-71-2408, MCA, became effective July 1, 1987 and is part of a group of statutes added to the Montana Workers’ Compensation Laws by the 1987 Montana Legislature providing for mandatory nonbinding mediation. Sections 39-71-2401 and -2406 through -2411, MCA. Carmichael resisted the mo *412 tion claiming the retroactive mandatory mediation deprived him of procedural due process and the right to a speedy remedy for his injury. .
In an opinion filed November 20,1987, the Workers’ Compensation Court determined the retroactive application of the mandatory mediation process did not violate claimant’s constitutional rights. The court recognized the mediation may result in some delay, but the delay was not so substantial as to render the process unconstitutional. While noting the mandatory mediation may cause some hardship, the court also rejected Carmichael’s due process argument. However, the court did review the Administrative Rules which elaborate on the implementation of the mandatory mediation, allowing a maximum of 100 days to complete the mediation process, and concluded this maximum time period must not exceed 49 days. The court adopted the 49-day time period based on Section 39-71-610, MCA, permitting the Division upon petition and at the Division’s discretion, to extend benefits for 49 days after the termination of benefits. By making this modification, the court hoped to relieve some of the potential hardship caused by delays during mediation. The court granted the defendant’s motion to dismiss and ordered the mediation process be completed within 49 days.
On December 16, 1987, Carmichael filed an application for a writ of supervisory control. On February 8, 1988, this Court granted the writ and decided to hear the following issue:
Whether the 1987 amendments to the Workers’ Compensation Act concerning dispute resolution and mediation, Sections 39-71-2401 and -2406 through -2411, MCA, apply, and if so, are constitutional as applied, to cases in which the injury occurred before July 1, 1987, but no petition was filed with the Workers’ Compensation Court until after that date.
Both parties hold the position that the mediation statutes, as written, apply to the facts of this case. The relator, Carmichael, chose to divide the remaining constitutional issue into four sub-issues:
Do the mandatory, nonbinding mediation requirements of Section 39-71-2401 et seq., MCA, unconstitutionally:
1. impair the obligation of contracts as between Workers’ Compensation insurers and those injured workers receiving benefits prior to July 1, 1987;
2. violate the due process clause of the Federal and State Constitutions as applied to termination-of-benefits disputes;
3. deprive Workers’ Compensation claimants of the remedy to peti *413 tion the Workers’ Compensation Court for a 49-day extension of benefits when those benefits are disputed;
4. deny Workers’ Compensation claimants of a speedy remedy for an injury to a vested property right?
Because we determine the nonbinding mediation requirements unconstitutionally impair a contractual obligation when applied to the facts of this case, we need not go beyond an analysis of the first issue.
Generally, Carmichael’s argument is based on the fact that his injury occurred prior to the time the legislature enacted the nonbinding mediation requirements. The. enactment applies to all injured workers regardless of the date of injury. 1987 Mont. Laws 464, Section 72. Carmichael argues the retroactive change results in a significant procedural delay substantially impairing his contractual rights.
“This Court has assumed for a number of years that the Workers’ Compensation statutes in effect on the date of injury set the contractual rights between the parties.” Buckman v. Montana Deaconess Hosp. (Mont. 1986), [224 Mont. 318,] 730 P.2d 380, 384, 43 St.Rep. 2216, 2222 (citing Trusty v. Consolidated Freightways (Mont. 1984), 210 Mont. 148, 681 P.2d 1085, 1087, 41 St.Rep. 973, 975). Both the United States and Montana Constitutions prohibit state laws impairing the obligation of a contract. Art I, Sec. 10, U.S.Const.; and Art. II, Sec. 31, Mont.Const. Carmichael recognizes this prohibition is not absolute, but contends there has been a substantial impairment of a contractual right within the meaning of the United States and Montana Constitutions under the facts of this case. Carmichael argues that following his injury and after his benefits began, he obtained a vested contractual and property right. After this right vested and prior to July 1, 1987, he had the right to directly petition the Workers’ Compensation Court if his benefits ceased. The mandatory mediation statutes retroactively altered this right to directly petition the Workers’ Compensation Court. Carmichael concludes since the mediation may result in a substantial delay causing him a significant hardship, the new mediation procedure is a substantial impairment of his vested contractual right.
Arco agrees that Carmichael has a contractual right which vested at the time of his injury and that his benefits cannot be subsequently altered by legislation. E.g., Buckman, 730 P.2d at 384-85, 43 St.Rep. at 2222. However, Arco states Carmichael is confusing his contractual right to workers’ compensation benefits with an alleged right to uninterrupted payments in all circumstances. Arco argues *414 the legislature has implemented a procedural change to encourage settlements and reduce the caseload of the Workers’ Compensation Court. Arco concludes this is merely a modification of the system for determining the eligibility for benefits, and in no way alters the benefits to which Carmichael may or may not be entitled.
In analyzing a contract clause challenge, this Court has often implemented a three-tiered analysis set forth by the United States Supreme Court in Energy Reserves Group, Inc. v. Kansas Power and Light Co. (1983), 459 U.S. 400, 103 S.Ct. 697, 74 L.Ed.2d 569: (1) Is the state law a substantial impairment to the contractual relationship? (2) Does the state have a significant and legitimate purpose for the law? (3) Does the law impose reasonable conditions which are reasonably related to achieving the legitimate and public purpose? See, Neel v. First Federal Sav. and Loan Assoc. (1984), 207 Mont. 376, 392, 675 P.2d 96, 104-105. See also, Buckman, 730 P.2d at 385, 43 St.Rep. at 2007. Although this Court clearly recognizes that our state constitution provides rights and protections separate from those afforded by the federal constitution, “[w]e have generally interpreted the contract clauses found in Art. II, Section 31, 1972 Mont. Const, and Art. I, Section 10(1), United States Constitution as interchangeable guarantees against legislation impairing the obligation of contracts.” Buckman, 730 P.2d at 384, 43 St.Rep. at 2221, (citing Neel, 675 P.2d at 103, 41 St.Rep. at 25). In analyzing this issue, we will implement the three-tiered analysis stated above.
The initial inquiry therefore, is whether the mandatory mediation statutes operate as a substantial impairment of the contractual relationship between workers’ compensation insurers and workers injured prior to July 1, 1987. If the answer is no, there need be no further inquiry. “Total destruction of contractual expectations is not necessary, and a law which restricts a party to gains reasonably expected from a contract is not a substantial impairment.” Neel, 207 Mont. at 392, 675 P.2d at 105. Prior to the passage of the mediation statutes, an injured worker had the right to directly petition the Workers’ Compensation Court to resolve disputes concerning benefits under the Workers’ Compensation Act. Section 39-71-2905, MCA, (1985). As previously noted, the mandatory nonbinding mediation process must now be satisfied prior to filing such a petition. Section 39-71-2908, MCA, (1987). In the opinion filed by the Workers’ Compensation Court, it was noted that the mediation may result in a delay of 100 days. With the exception of his workers’ compensation benefits, the record indicates Carmichael is without *415 financial resources to support his family. The delay presented by the current mediation statutes is an additional delay not existing on the date Carmichael was injured, which was the date his contractual rights vested. Buckman, 730 P.2d at 384, 43 St.Rep. at 2222. We find the delay caused by the mandatory mediation statutes represents a substantial impairment of those contractual rights.
Next, we must ask whether the state has a legitimate and significant purpose for the law. The general purpose of the new mediation statutes is to encourage out of court settlements and thereby lessen the volume of cases filed in the Workers’ Compensation Court. Section 39-71-2406, MCA. This appears to represent a legitimate state purpose.
The final step of the analysis is whether the law imposes reasonable conditions reasonably related to achieving the legitimate purpose stated above. As was noted in Neel, “unless the State is a party to the contract, courts will properly defer to legislative judgment on this step.” 207 Mont. at 392, 675 P.2d at 105. Since the Workers’ Compensation Court is a named respondent, we consider the state a party to this action and will consider this third question.
The record indicates insufficient evidence to demonstrate the mandatory nonbinding mediation presents conditions reasonably related to achieving the stated purpose as applied to those workers injured before the effective date of the statutes. Certain vague statistical evidence was presented tending to show the mediation procedures were encouraging settlement, but the statistics fail to give any clear answers. Certainly there is insufficient evidence to demonstrate the mediation process will achieve a more manageable caseload for the Workers’ Compensation Court when applied to claimants injured prior to July 1, 1987; those claimants whose contractual rights to benefits vested on the date of injury.
Carmichael demonstrates a substantial impairment of his contractual rights and there is insufficient evidence to demonstrate the mediation statutes achieve their purpose as applied to claimants injured prior to the effective date of the statute. We hold the retroactive application of the mandatory nonbinding mediation statutes unconstitutionally impairs a contractual obligation. Accordingly, Carmichael may directly petition the Workers’ Compensation Court.
For the foregoing reasons, we reverse the decision of the Workers’ Compensation Court and remand for further consideration consistent with this opinion.
*416 MR. JUSTICES SHEEHY, McDONOUGH and HUNT concur.